**People of the State of Illinois, Plaintiff-Appellant,
v. Susan St. Ives, Defendant-Appellee.**

**Gen. No. 52,827.**

First District, Second Division.

April 22, 1969.

Rehearing denied May 13, 1969.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Daniel W. Weil, and Lewis A. Wenzel, Assistant State's Attorneys, of counsel), for appellant.

Allan A. Ackerman, of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Defendant was indicted in December 1966 for the crime of unlawful possession of narcotics. Defendant's motion to suppress evidence was allowed by the trial court and the State appeals. Supreme Court Rule 604(a); Ill Rev Stats 1967, c 110A, Par 604(a); People v. Vaglica, 99 Ill App2d 194, 240 NE2d 271.

On July 21, 1966, Chicago Police Officers John Kane and John McCormick made several telephone calls to telephone numbers which they thought might be the numbers of prostitutes. Officer Kane dialed a specific number and spoke to a woman, later stipulated to have been the defendant. Officer Kane identified himself as "Jerry Siegel" and set a date with defendant for 6:00 p. m. that same evening at defendant's apartment in Chicago, the address of which defendant gave Officer Kane during the telephone conversation. No search warrant or arrest warrant was issued in this matter.

Shortly before 6:00 p. m., Officers Kane, McCormick, Coughlan and Meade drove to the vicinity of defendant's

apartment. Officer McCormick alighted from the police vehicle and walked to the apartment building. Upon reaching the foyer of the building, the officer rang the buzzer to defendant's apartment and a woman's voice, later determined to have been that of the defendant, inquired as to the caller's identity over the building's call system. Officer McCormick replied, "Jerry Siegel," to which defendant replied, "Come on up." The officer proceeded upstairs to defendant's apartment on the second floor, and finding the apartment door slightly ajar, he looked into the apartment and observed defendant seated at a portable bar. Officer McCormick knocked lightly and said, "I'm Jerry," and defendant replied, "Come on in."

The officer entered the apartment and engaged defendant in conversation, after which the other three officers were summoned to the apartment. Although defendant's memorandum in support of her motion to suppress reveals that she was placed under arrest for "solicitation for prostitution," how the officers secured the narcotics in question does not appear of record other than a statement in the memorandum that Officer McCormick "allegedly observed a bottle bearing a label of 'Cocaine'" and that after defendant was placed under arrest a search was conducted and the narcotics in question were found in a drawer. The trial court refused to allow into evidence anything which transpired in the apartment subsequent to the entry by Officer McCormick, on the ground that entrance to the apartment was gained illegally, by means of the subterfuge of the fictitious name "Jerry Siegel," in violation of defendant's constitutional rights. The court held the illegal entry tainted all matters occurring subsequent thereto.

The question raised is whether the employment of the name "Jerry Siegel" by Officer Kane to set up a date for entry into the apartment of a suspected prostitute by Officer McCormick constituted such subterfuge on the

39

part of the police as to violate defendant's constitutional rights. We are of the opinion that it did not.

In the case of Lewis v. United States, 385 US 206, decided in December 1966, narcotics undercover agent Edward Cass telephoned defendant's home and represented himself as "Jimmy the Pollack." The officer told defendant that he and defendant had a mutual friend and requested the purchase of narcotics. The defendant and the officer had not known each other prior thereto. Defendant agreed to the sale and gave the officer his home address where two sales of narcotics by defendant to the officer were subsequently made. Defendant was arrested and tried for the unlawful sale of narcotics. Defendant there claimed that the officer gained illegal entry to his home by means of subterfuge, in violation of his constitutional rights.

The Supreme Court, in answering this contention, stated at page 210 of that opinion:

> ". . . [Defendant] invited the undercover agent to his home for the specific purpose of executing a felonious sale of narcotics. [Defendant's] only concern was whether the agent was a willing purchaser who could pay the agreed price. . . . Were we to hold the deceptions of the agent in this case constitutionally prohibited, we would come near to a rule that the use of undercover agents in any manner is virtually unconstitutional per se. Such a rule would, for example, severely hamper the Government in ferreting out those organized criminal activities that are characterized by covert dealings with victims who either cannot or do not protest."

(A footnote to the above quoted portion makes reference to criminal activities which the Court had in mind such as vice, liquor and narcotics.)

In the case at bar, Officer Kane, representing himself as "Jerry Siegel," succeeded in setting a date with

40

defendant. Officer McCormick, employing the same name, succeeded in gaining access to defendant's apartment where the officers had reasonable grounds to believe a crime was about to be committed, based upon Officer Kane's prior telephone conversation with defendant. (See People v. Owens, 41 Ill2d 465, 244 NE2d 188.)

The cases cited by defendant in support of her position are not in point. In Gouled v. United States, 255 US 298, a close business acquaintance of the defendant, acting pursuant to police directions, gained access to defendant's office under the pretext of making a social visit, but in defendant's absence secretly ransacked the office and seized certain incriminating papers for the police. Here it is not claimed that defendant was acquainted with either Officer Kane, Officer McCormick or "Jerry Siegel" and she was not deceived into allowing access to her apartment. Officer McCormick was admitted to the apartment according to the arrangements made previously by Officer Kane.

In Fraternal Order of Eagles, No. 778 v. United States, 57 F2d 93, police officers gained admittance to defendant's premises by means of falsified membership cards and false representations that they were members of the defendant organization. No such situation is presented here.

The holding in People v. Dent, 371 Ill 33, 19 NE2d 1020, that the action of police officers in gaining admittance to defendant's premises was fraudulent because an unknown person within invited the officers into the premises and because they failed to disclose "their official character and purpose," was modified by the later case of People v. Walker, 30 Ill2d 213, 195 NE2d 654, which holds that a police officer need not voluntarily disclose his purpose or office, so long as he does not affirmatively represent himself as "anything other than a member of the general public." The Walker case, de-

cided in January 1964, should be read with the more recent case of Lewis v. United States, discussed above.

Defendant contends that her home should be accorded the full range of constitutional protection. In Lewis v. United States, 385 US 206, at page 211, the court said that when the home "is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street."

In the instant case the police were invited into defendant's apartment. The trial judge should have allowed evidence to be presented of the conversations the officers had with the defendant and the activities in the apartment subsequent to the entry.

For these reasons the order is reversed, the indictment is reinstated, and the cause is remanded for further proceedings.

Order reversed, indictment reinstated, and cause remanded for further proceedings.

LYONS, P. J. and McCORMICK, J., concur.