(No. 38703.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM OWENS, Plaintiff in Error.

*Opinion filed January 29, 1969.*

WARD, J., took no part.

ALLAN PETERS, of Arlington Heights, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED

G. LEACH, Assistant Attorney General, and ELMER C. KIS-SANE, JAMES HADDAD, and EDWARD STASUKAITIS, of counsel,) for the People.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendant, William Owens, seeks review of his conviction in the circuit court of Cook County of unlawful possession of narcotics for which he received a sentence of from 5 to 10 years. Jurisdiction in this court is grounded on his contention that certain evidence introduced at trial was procured through constitutionally impermissible means.

The sole testimony elicited at the hearing on defendant's motion to suppress this evidence was that of a Chicago police officer, Andrew Craig, called by defendant as his witness. Craig stated that at about midnight on January 24, 1963, he and his partner, Officer Thomas Simpson, went to the Sacramento Hotel in Chicago to investigate a complaint that a prostitute was operating out of Room 320. A check of the hotel registry disclosed that this room was registered to a Mr. and Mrs. Bruce Urban, the latter of whom Craig knew to be Katherine Fisher, a prostitute and narcotics addict. The officers ascended to Room 320, knocked on the door and heard a woman's voice ask who was there. Craig recognized the voice as that of Katherine Fisher and replied "It's Craig" to which she answered, "There's nothing happening here, come on in." The door opened and the officers walked in and observed Katherine Fisher standing, Bruce Urban sitting on the bed and defendant sitting in an arm chair. Defendant then asked "Who is this", to which Katherine Fisher replied, "This is the police." Thereupon defendant sprang from the chair, took a tinfoil package from his shirt pocket, ran into the bathroom and attempted to flush the package down the toilet. Craig, however, followed him into the bathroom and retrieved the package from the commode. Upon open-

ing the package, he found 23 smaller tinfoil packets inside and asked defendant "What about this?" Defendant replied, "You got me." Craig quickly field-tested the contents of the packets, determining them to be heroin, and placed defendant under arrest for unlawful possession of narcotics.

On appeal defendant argues that the heroin should have been suppressed since it was obtained by an illegal search and seizure in violation of his rights under the fourth amendment. It is urged that the "search" (his characterization of the confiscation of the heroin) cannot be justified as incidental to a lawful arrest since it preceded his arrest.

In light of facts as established by the record, this argument cannot be sustained. The police officers were properly in the room, having been admitted at the invitation of the occupant. (*People* v. *Perroni,* 14 Ill.2d 581; *People* v. *Harris,* 34 Ill.2d 282.) Upon learning their identity, the defendant, in plain view of them, took a tinfoil packet, which officer Craig testified he recognized, from his 6½ years experience on the force, as a commonly used container for narcotics, and attempted to flush it down the toilet. We think these circumstances would warrant a reasonable and prudent man in believing that a crime was being committed (*People* v. *Jones,* 31 Ill.2d 240, 244), thereby justifying the officer's seizure of the tinfoil packet. (*People* v. *Heidman,* 11 Ill.2d 501, 509; *People* v. *Davis,* 33 Ill.2d 134, 138.) We hold the motion to suppress was properly denied.

At trial the court overruled certain defense objections while sustaining certain objections by the State. Defendant charges that the "total effect of these decisions was to give the jury a biased view of the defendant's case." While this charge is quite nebulous, whatever efficacy it might possess must necessarily depend upon the propriety of the rulings, since only an erroneous ruling could possibly prejudice the defendant's cause.

In his brief, defendant sets forth examples of the

468

court's rulings on objections. He notes that Officer Simpson was allowed "to testify as to the results of the field test", that an expert witness was permitted "to explain in layman's language what a field test is" and that the court permitted defendant upon cross-examination to answer questions relating to whether he had ever used narcotics or had ever seen the Urbans use narcotics, and to what a narcotics "outfit" consisted of. Although it is not alleged, nor are any authorities cited to show, that these ruling are erroneous, from the context of defendant's argument it must be inferred that he regards them as such. We, however, cannot share this estimation of the court's action. The testimony of Officer Simpson and the expert witness was patently proper and the questions asked of defendant by the prosecution were all related to matters opened up on direct examination.

Our study of the record satisfies us that defendant received a fair trial and that his conviction is based upon evidence establishing his guilt beyond a reasonable doubt. Therefore, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.