THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT TAYLOR, Defendant-Appellant.

Fifth District   No. 76-258

Opinion filed November 2, 1977.

Bruce N. Cook, of Hillebrand, Cook & Shevlin, Ltd., of East St. Louis, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Bruce D. Irish and John A. Clark, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant-appellant Robert Taylor was convicted after a jury trial in the Circuit Court of Madison County of the unlawful delivery of heroin, a controlled substance. He was sentenced to a term of three to nine years' imprisonment.

The facts in brief are as follows. On August 27, 1975, according to the testimony of the State's witnesses, Taylor sold two small tinfoil packets of

a brown powder to undercover agents of the Illinois Bureau of Investigation for $50. The next day, one of the agents delivered the powder to a chemist at the State crime laboratory, with instructions to perform both qualitative and quantitative tests: that is, to determine whether the powder contained a controlled substance, and, if so, what proportion of the powder was a controlled substance. The powder weighed 0.5 gram (less than one-fiftieth of an ounce). After the qualitative tests, from which the chemist concluded that heroin was present in the brown powder, about half of the powder remained. Virtually all of the other half was consumed by the quantitative test, which revealed, according to the chemist, that some 2.6 percent of the powder was heroin. What little residue remained was washed down the drain by the State's chemist at the conclusion of his tests.

About four and a half months later, Taylor was indicted and arrested. He pleaded not guilty and filed discovery motions seeking the results of any tests performed by the State on the substance he was alleged to have delivered, and a representative sample of the substance. The State produced reports of its tests, but stated that it was unable to produce any visible samples of the substance because it had been entirely consumed in testing. Defense counsel's motions to exclude all testimony regarding the identification of the substance, and to dismiss the case, both based on the inability of the defense to perform independent tests of the substance, were eventually denied by the court.

At trial, Taylor called six witnesses in support of his alibi defense. He then took the stand on his own behalf and denied seeing or having any dealings with the narcotics agents on August 27, 1975. He testified that he first learned of the charges against him when he was arrested in January 1976, almost five months after the alleged unlawful delivery.

On appeal, the defendant contends that he was deprived of a fair trial and effectively denied the right to confront and cross-examine the witnesses against him because all of the substance that he allegedly delivered was unnecessarily consumed during pre-indictment testing.

We think that defendant's contention is well taken. The State concedes on appeal, as it must, that it "does not have a carte blanche to destroy all material evidence," but argues that the destruction of the substance involved in the instant case was reasonable and necessary. In support of its argument, the State points to the fact that, at the time of the tests involved here, *People v. Mayberry*, 63 Ill. 2d 1, 345 N.E.2d 97 (1976), *cert. denied sub. nom. Hurley v. Illinois*, 429 U.S. 828, 50 L. Ed. 2d 92, 97 S. Ct. 87 (1976), had not yet been decided. (In *Mayberry*, our supreme court decided that basing the gravity of a controlled substance offense on the quantity of the *substance containing* the controlled substance is constitutional.) Thus, the argument goes, the State had a legitimate

concern to determine the purity of the substance, and thus the quantitative testing, which destroyed the other half of the substance, was reasonable and necessary.

■■ On close examination, however, it is manifest that this argument is spurious. The total weight of the brown powder allegedly delivered by defendant was 0.5 gram. Therefore, whatever its purity, if it contained any heroin at all, and if the other elements of the offense were proved, defendant would have faced conviction of a Class 2 felony for delivery of any amount less than 30 grams of a substance containing heroin. (See section 401(b) of the Controlled Substances Act, Ill. Rev. Stat. 1975, ch. 56½, par. 1401(b).) Thus the quantitative testing performed by the State was unnecessary, and, in our view, because of its effect on defendant's ability to prepare his defense, unreasonable.

We are mindful that testing of contraband is often necessary to determine whether or not the State has a case for prosecution, sometimes long before the defendant knows of the charge against him, and we are mindful that proper investigation of narcotic cases often requires that substantial periods of time elapse between the commission of an offense and the institution of criminal prosecution.

We are equally mindful, however, that expert opinions as to the accuracy and conclusiveness of tests performed upon chemical substances can and do differ, and that one of the primary strategies available to defense counsel in a drug case is to raise a reasonable doubt as to the identity of the substance involved. (For a recent example of a case which reached this court in which prosecution and defense experts disagreed as to the results of tests performed, see *People v. Behnke*, 41 Ill. App. 3d 276, 353 N.E.2d 684 (5th Dist. 1976).) The authors of one study who conducted a nationwide survey of 37 crime laboratories representing 135 drug analysts concluded that the analysts "as a group suffer from a serious lack of specialized training in drug analysis * * * [and] are simply not adequately equipped to solve many drug identification problems." B. Stein *et al.*, *An Evaluation of Drug Testing Procedures Used by Forensic Laboratories and the Qualifications of Their Analysts*, 1973 Wis. L. Rev. 727, 736; see also D. Bernheim, Defense of Narcotics Cases, ch. 4 (1976 rev.).

We are not dealing with suppression of material evidence favorable to defendant (*Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196 (1963); *Moore v. Illinois*; 408 U.S. 786, 794, 33 L. Ed. 2d 706, 713, 92 S. Ct. 2562, 2567 (1972)); nor a situation of failure to produce evidence capable of production, the value to defendant and materiality of which is unknown to defendant (*People v. Nichols*, 63 Ill. 2d 443, 349 N.E.2d 41 (1976)). But inherent in the most narrow view of due process are the right to know of adverse evidence and the opportunity to rebut it. (*United States v. Owen*, 415 F.2d 383 (8th Cir. 1969).) Although the

discovery rules do not apply by their terms before a defendant is charged (Supreme Court Rule 411, Ill. Rev. Stat. 1975, ch. 110A, par. 411), we think that the State's duty of disclosure is operative at the investigatory stage as a duty of preservation. (See, *e.g., People v. Norwood*, 547 P.2d 273 (Colo. App. 1975).). As the court said in *United States v. Bryant*, 439 F.2d 642, 648 (D.C. Cir. 1971):

> " * * * Were *Brady [v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)] and its progeny applicable only when the exact content of the non-disclosed materials was known, the disclosure duty would be an empty promise, easily circumvented by suppression of evidence by means of destruction rather than mere failure to reveal. The purpose of the duty is not simply to correct an imbalance of advantage, whereby the prosecution may surprise the defense at trial with new evidence; rather, it is also to make of the trial a search for truth informed by all relevant material, much of which, because of imbalance in investigative resources, will be exclusively in the hands of the Government."

We are not suggesting that the State has a duty to disclose at the investigatory stage, simply that it has a duty to preserve some part of the substance so that an independent chemical analysis may be made by the putative law violator in the event criminal prosecution is later instituted. We believe that the scientific expertise exists that allows for identification of narcotics and dangerous drugs without the necessity for destructive testing where relative small amounts of the offending substance are involved. This procedure would not unduly hamper effective law enforcement.

It is not suggested and we are convinced that the testing conducted was not done with the intent to deprive defendant of an opportunity to have an independent analysis of the substance, and we note that the majority of courts considering the subject of destructive testing under varying circumstances have rejected the position we now adopt. See, *e.g., State v. Cloutier*, 302 A.2d 84 (Me. 1973); *Lee v. State*, 511 P.2d 1076 (Alas. 1973); *State v. Lightle*, 210 Kan. 415, 502 P.2d 834 (1972); *Poole v. State*, 291 So. 2d 723 (Miss. 1974).

■■ We hold, therefore, that defendant in the instant case was denied due process of law and the opportunity for meaningful confrontation of the witnesses against him by the State's unnecessary destruction of the allegedly prohibited substance which he allegedly delivered to agents of the State, and that his conviction must be reversed. This holding should not be read as stating that in every instance in which an agency of the State destroys all of a controlled substance in the process of testing, the conviction of the defendant cannot stand. (*Cf. State v. Jones*, 18 Ore. App. 343, 525 P.2d 194 (1974).) But whenever an accused seeks by timely motion a sample of the allegedly controlled substance, so that it can be

subjected to independent testing under appropriate safeguards as may be deemed necessary by the trial court (see *State v. Cloutier*, 302 A.2d 84 (Me. 1973)), a heavy burden devolves upon the State either to produce a testable sample or to prove by clear and convincing evidence that the destruction of all of the substance in its possession was necessary. If it can do neither, then it should not, as a matter of fundamental fairness, be permitted to introduce into evidence the results of its tests. As the destruction here was clearly unnecessary, the State's expert testimony should not have been admitted, and defendant's conviction must be reversed, and while we hold that defendant's conviction must be reversed, we do not believe that outright reversal is mandated.

The objection to destructive testing by the prosecution is that the defendant cannot meet or dispute the test results by evidence of equal integrity and persuasiveness, as it is clear that laboratory analysis of the evidence will carry great weight with a jury. If the results of the scientific tests are suppressed, the State may still be able to avail itself of other evidence to prove the presence of heroin in the substance in question.

The presence of narcotics may be proved by circumstantial evidence, and the substance in question need not be produced at trial. *People v. Robinson*, 14 Ill. 2d 325, 153 N.E.2d 65 (1958); *People v. Binkley*, 25 Ill. App. 3d 27, 322 N.E.2d 514 (1975).

In *Toliver v. United States*, 224 F.2d 742 (9th Cir. 1955), the court said:
"We find in the record, ample evidence from which the jury could conclude that heroin was involved in the absence of the witness' own opinion. The exhorbitant price paid for the small amount of substance; the fact it was a powder; that Brown had been a user and had had previous transactions in narcotics with the appellant; that Brown bought the substance as heroin; that Brown sold the substance to his customers as heroin and that none of them "kicked" or complained, supplied sufficient evidence for the jury to draw the inference that the powder was heroin." (224 F.2d 742, 745.)

Like language appears in *United States v. Agueci*, 310 F.2d 817 (2d Cir. 1962), and *United States v. Lawson*, 507 F.2d 433 (7th Cir. 1974). Thus it is clear that the identity of the illegal substance may be proved by circumstantial evidence.

For the foregoing reasons, the judgment of the Circuit Court of Madison County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

CARTER, P. J., and JONES, J., concur.