THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KELLY B. DODSWORTH, Defendant-Appellant.

Fourth District   No. 14440

Opinion filed May 19, 1978.

TRAPP, J., dissenting.

J. Edward Flynn, of Flynn & Flynn, of Jacksonville, for appellant.

Edwin R. Parkinson, State's Attorney, of Jacksonville (Robert C. Perry, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

This appeal concerns the problems involved in a prosecution for unlawful possession of a controlled substance when the defendant is prevented from obtaining an independent testing of the substance alleged to be contraband because the State has destroyed the substance in the testing it has done.

Defendant, Kelly B. Dodsworth, was convicted after trial by jury in the circuit court of Morgan County of the offense of unlawful possession of a controlled substance, .03 grams of methylenedioxyamphetamine (MDA), in violation of section 402(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(b)). He was sentenced to 1 year of probation and fined $750 and costs.

The parties agree that law enforcement officers found defendant to be in possession of a certain substance which they took from him and delivered to a State laboratory for analytical testing. The person who performed the tests testified that the substances contained .03 grams of MDA. For purposes of appeal, the parties have stipulated that (1) the State's testing destroyed so much of the substance that no further testing could be done; (2) the testing could have been done and the same results reached by the destruction of only one-third of the substance submitted; and (3) the defendant had moved to exclude evidence of the results of the test before it was admitted and had moved to strike testimony concerning the testing after it was given. The record further shows that prior to trial the court had granted a motion by the defendant for an order directing

the State to produce the substance for testing by the defendant, and that the State was unable to do so because the only residue left after the State testing was too small for further testing.

The sole question raised by defendant on appeal is whether the trial court committed reversible error in refusing his request to either dismiss the case or deny admission of the evidence of the results of the State's test as a sanction for State's destroying the substance seized before he had a chance to have an independent analysis made.

The stipulation which was prepared for use in lieu of supplying a report of proceedings begins with the following as one of its statements of fact: "That a substance weighing .03 grams of a substance containing methylenedioxyamphetamine, hereinafter referred to as MDA, was delivered to" the agent of the Bureau of Identification. The defendant maintains that this was not intended to be an admission by him that the substance taken from him and delivered to the Bureau for testing was in fact MDA. The parties would not be likely to intentionally enter into an agreement that would confess the central factual issue in the case and make the error cited harmless. Accordingly, we conclude that the wording of this part of the stipulation was inadvertently contrary to the intention of the parties. We will not consider it in our determination.

The State's argument supports the trial court's denial of the relief requested by the defendant on the theory that language of Supreme Court Rule 415(g) (58 Ill. 2d R. 415(g)) provides that the court "may" impose the sanction of excluding evidence. The State further contends that, in any event, the sanction of exclusion of evidence should be imposed only upon a showing of prejudice to the defendant or culpability upon the part of the State. The defendant, on the other hand, argues that regardless of the State's culpability, he is necessarily so greatly prejudiced by his inability to have independent testing done that the denial of the relief he requests was reversible error.

*People v. Taylor* (1977), 54 Ill. App. 3d 454, 369 N.E.2d 573, *appeal denied*, ___ Ill. 2d ___, is the only Illinois case ruling upon destructive testing of evidence in a criminal case. There, a substance which the evidence indicated to have been sold by the defendant to an undercover law enforcement officer was unnecessarily destroyed in testing conducted by the State. The State, as here, was unable to produce the substance for defendant's testing prior to the defendant's trial for the unlawful delivery of the substance which was alleged to be heroin. The appellate court reversed the defendant's subsequent conviction and remanded for a new trial, ruling that the trial court should have granted the defendant's request to exclude evidence of the result of the State's test.

■■ The *Taylor* opinion emphasized that laboratory testing of allegedly contraband substances is not infallible, citing a study described in B. Stein

*et al., An Evaluation of Drug Testing Procedures Used by Forensic Laboratories and the Qualifications of Their Analysts,* 1973 Wis. L. Rev. 727, 736. The court determined that without independent testing the accused had no reasonable way of cross-examining the chemist who performed the test for the State and held that the unnecessary destruction of the substance deprived the accused of due process of law. We agree with the conclusion of that court, inherent in its decision, that to be entitled to relief, the accused need not prove actual prejudice arising from the destructive testing because, in the absence of an independent test, the accused will usually not know whether the results of the State's test were inaccurate or incorrect.

The matter of culpability of the State presents a more difficult question. The State does not dispute that if the State destroyed the substance being tested intentionally and for the purpose of preventing independent testing by defendant, evidence of the State's testing should have been excluded. The *Taylor* court stated it did not think that occurred there and the record gives no indication of such occurring here. In both cases, the destruction was unnecessary but in neither case was it shown whether the destruction was intentionally and knowingly done or whether it occurred as the result of negligence, accident, or other inadvertence. In speaking of negligence in this respect, we distinguish between negligence in determining the necessity to destroy in testing, and negligence in the operation of the testing which unintentionally causes the substance to be destroyed.

■■ The *Taylor* opinion stated that when, in a criminal case, the State is unable to produce for defense testing, the alleged controlled substance which is at the heart of the State's case, because the substance has been destroyed by State's testing, a "heavy burden" rests upon the State to show that the destructive testing was necessary. (54 Ill. App. 3d 454, 458, 369 N.E.2d 573, 576.) We are in general agreement with that statement. By analogy to that statement, we also conclude that if the destructive testing may be excused on any grounds such as accident, other inadvertence or even negligence, a similar burden is placed upon the State to show that this was the reason for the destruction. We are not ruling that any of these reasons are excuses for destructive testing. Because the State offered no evidence to excuse the testing upon these grounds we need not consider that question here.

We do not consider that an undue burden is placed upon law enforcement officials by requiring the State to prove some justification for destructive testing. It would appear that unnecessary destructive testing ordinarily occurs neither because of an intent by the State to deprive the defendant of an opportunity for testing nor because of unintended destruction, but rather from lack of sensitivity to defendant's right to perform independent tests.

We recognize, as did the *Taylor* court, that our decision is contrary to the precedent of a few cases in other jurisdictions. The problems involved in destructive testing have only recently received consideration by courts of review (*Sarver v. Barrett Ace Hardware, Inc.* (1976), 63 Ill. 2d 454, 349 N.E.2d 28). We also recognize that the law must develop on a case-by-case basis. Perhaps the rights of a defendant can be safeguarded by protective court order setting forth conditions for destructive testing by the State which permit the defendant to have an observer present at the testing. (*Sarver.*) In any event, where as here, the State unnecessarily and presumably intentionally destroys the alleged contraband without the defendant having opportunity for his own testing or the protection of court imposed safeguards to protect his rights, we agree with *Taylor* that the trial court commits reversible error in admitting evidence of the results of the State's test.

■■ Accordingly, we reverse the defendant's conviction and sentence. We agree with *Taylor* that the possibility of proving the offense without the aid of the testimony of the chemist is at least theoretically present. For this reason, we remand for a new trial.

Reversed and remanded for a new trial.

CRAVEN, J., concurs.

Mr. JUSTICE TRAPP, dissenting:
A failure to provide discovery is not a denial of a constitutional right under the due process clause. (*United States v. Augenblick* (1969), 393 U.S. 348, 356, 21 L. Ed. 2d 537, 545, 89 S. Ct. 528.) That case concerns certain recordings of interviews which were lost and could not be supplied for purposes of discovery.

One finds that the highest courts in several states have determined that the exhaustion of the supply of a narcotic or controlled substance is not a valid basis for excluding the State's analysis of the samples available as a denial of due process. *Lee v. State* (Alas. 1973), 511 P.2d 1076; *State v. Cloutier* (Me. 1973), 302 A.2d 84; *Poole v. State* (Miss. 1974), 291 So.2d 723; *State v. Lightle* (1972), 210 Kan. 415, 502 P.2d 834.

In terms of the consideration of the record, the principal opinion has departed from the literal reading of the stipulation as to defendant's admission of the nature of the substance. While the stipulation recites that the State laboratory could have performed the same test with .01 grams of the substance, the limited record of the cross-examination attached to support the stipulation suggests that the stipulation is but partially correct. This case is actually distinguishable from *People v. Taylor* (1977), 54 Ill. App. 3d 454, 369 N.E.2d 573, wherein the court concluded that the

substance received was "unnecessarily consumed." In *Taylor*, the .5 of a gram of substance was apparently purchased by undercover agents as heroin. The initial, and probably the sole test required, was to verify the substance as heroin. One-half of the substance was consumed in such identification test and the other half was consumed in determining its quality. It was the latter test which the court declared unnecessary.

Here, the quantity was 6 percent of the amount in *Taylor*. This record suggests that a packet of an unidentified powder was found incident to search upon another arrest. We find no initial or tentative identification of the nature of the substance at that time. The transcript of the chemist's testimony presented as the only evidence upon the issue of negligence in testing and in support of the stipulation is limited to the cross-examination of the chemist witness concerning the sensitivity of the gas chromatograph that "it would not surprise me [the witness] to be able to detect MDA at a concentration of .01 [of a gram]." From such the defendant argues that we must therefore conclude that there was gross negligence in using the entire quantity, *i.e.*, the .03 grams to complete the test. The argument requires an assumption that the gas chromatograph was the only one to be made. In fact, the witness' answer was, "That was the final test, yes."

It is apparent that unlike the circumstances in *Taylor*, the analyst here could not simply undertake to verify the substance as MDA by the gas chromatograph test. Rather, he would have to proceed to perform his tests in the context of a complete unknown.

In *State v. Cloutier* (Me. 1973), 302 A.2d 84, 87, the court noted:

> "A very different practical problem is posed for the Court's resolution when the State has in its possession as evidence a very small quantity of a substance which will be destroyed, exhausted, substantially diminished or chemically altered by chemical analysis. With the great increase in cases involving the unlawful sale or possession of drugs, this becomes a matter of great importance. Obviously, what is 'reasonable' in such cases will vary markedly from case to case. So also will the nature of the court orders if the court is to preserve a fair and just balance as between the legitimate interests of the defendant and the practical necessity of protecting and preserving the State's evidence."

In *Cloutier*, the evidence consisted of one tablet of LSD, three-fourths of which was consumed in testing. The trial court denied defendant's motion for an independent test of the remaining one-fourth tablet and was affirmed.

There are practical problems illustrated here which are not solved in the opinion citation of *Sarver v. Barrett Ace Hardware, Inc.* (1976), 63 Ill. 2d 454, 349 N.E.2d 28, which concerned protective orders to be entered in

civil discovery cases. Here, the police obtained the unidentified substance in the latter part of August 1976. It was delivered to the laboratory on August 30. The laboratory report was dated October 8, 1976, and the complaint was filed on that date with service of warrant on the 9th of October. There is no present statutory procedure or rule for the entry of protective orders as to criminals who have not been and cannot be charged until the substance has been analyzed.

The opinion holds that by reason of this record the evidence of the chemical analysis was at trial and is hereinafter inadmissible and states a conclusion that destructive testing "ordinarily occurs * * * from lack of sensitivity to defendant's right to perform independent tests." The tests were performed in September or October 1976. This case was tried in March 1977. The opinion in *Taylor* was published in November 1977. During the preparation and trial in those proceedings neither the trial judge nor counsel had access to the conclusions in that opinion concerning the burden of proof where the evidence was unavailable. The available legal standard concerning admissibility was that of *Augenblick* where the test was whether the evidence had been suppressed or the prosecution had not acted in good faith.

In *People v. Stamps* (1977), 52 Ill. App. 3d 320, 367 N.E.2d 543, certain notes of statements had been lost between the initial trial and a retrial. Defendant contended that the charges should be dismissed or the testimony disallowed alleging gross negligence in maintenance of the records. This court affirmed the findings of the trial court that the prosecution had acted in good faith in keeping the records, although it had been negligent to some degree. That should be the standard here.

We are presented with no record which suggests that the validity of the chemical identification was a genuine question of fact at trial. Defendant was presented with the report of the laboratory in discovery. This record does not show cross-examination or questions concerning the validity of the method of the analysis or the accuracy of the results. Upon that record presented it cannot even be said that the record shows any negligence in the conduct of the test. The trial court heard all of the evidence upon the issue and in the denial of defendant's motion it is implicit that the court found no bad faith.

In the light of the facts contrasting *Taylor* and the circumstance of the discovery of the quantity of MDA here, remanding for a new trial will doubtless be a useless gesture.

The judgment below should be affirmed.