THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOSEPH LOPEZ, Defendant-Appellant.

First District (1st Division)    No. 81-0771

Opinion filed June 28, 1982.

Steven Clark and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Dean P. Karlos, Denise O'Mally Porn and Lester M. Joseph, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GOLDBERG delivered the opinion of the court:

After a bench trial, Joseph Lopez (defendant) was convicted of delivery of less than 300 grams of phencyclidine (PCP), and was sentenced to three years. Defendant appeals.

An undercover officer testified that on February 27, 1979, he was introduced to defendant in the area of Damen and 35th Street in Chicago.

The officer told defendant he wished to buy 4 ounces of PCP. Defendant said he did not have the substance but could have it by nighttime. They agreed to meet in the area that evening.

The officer drove his brown Buick to the place at about 8:40 p.m. He parked on the north side of the street and walked over to a parked Dodge van on the south side. Defendant stepped out of the van, and the officer asked if he had the substance. Defendant said no because the pharmacist was sick. Defendant stated he knew the pharmacist for four years and the man could make "either PCP or MDA, whatever I wanted." Defendant and the officer began to walk down the street together. Two girls about 14 years of age approached. They asked defendant if each of them could have a gram of PCP. Defendant gave the girls two plastic bags containing a white powdered substance. The girls gave defendant some money and left.

Defendant and the officer walked back and entered the officer's car. Defendant said he had "been dealing a long time and he didn't want to screw up now." The officer asked if defendant had a sample of PCP. Defendant gave the officer a plastic bag "containing a white powdered substance" and asked for $60. Defendant said he had sold the other two grams to the girls for $65. The officer gave defendant $60 and defendant left.

The officer field tested the powder. The test indicated possible or presumptive presence of PCP. The officer emptied the contents into a new plastic bag, which he and another officer initialed. He then added the original bag and sealed the new bag with staples and tape. He then put the new bag into a manilla envelope and locked and sealed it. He put an endorsement on the envelope which stated the contents and the place and time of receipt. That night the officer made photocopies of the outside of the plastic envelope and the manilla envelope.

On the next day the officer delivered the locked and sealed envelope to a chemist at the office of the Maywood Crime Laboratory. Some two months later the officer found defendant's name in Chicago police records. Defendant was then arrested.

The qualified forensic chemist testified that on February 28 she had received the manilla envelope from the officer. She identified a photocopy of this envelope. The copy actually and accurately showed the contents of the envelope. The chemist opened the envelope and examined the contents. There were markings on the outside of the plastic envelope including initials of the officer. The chemist also produced photocopies of the cover of her laboratory log book and of two pages thereof. These photographs showed the date of receiving the envelope. The chemist testified the various tests she made showed that the substance contained PCP.

Defendant called Joseph Koestner, with whom defendant lived for eight years, and also Rebecca Cochran, a friend of Koestner and defendant. Koestner testified that on February 27, 1979, between 7 and 9 p.m., he saw a dark car park in a parking lot on the north side of the street. A friend of defendant, Dave Krolic, came out and asked Koestner for the defendant. Krolic went upstairs and he and defendant came down together. The car was moved from the parking lot. Defendant spoke with persons in this car. Defendant never entered the car and never reached inside thereof. The occupants of the car never put their arms out. A red van then pulled up across the street. Two friends of defendant were in the van. Defendant walked across the street and spoke to them. The witness also saw Rebecca Cochran come out of a snack shop, approach the van and talk to a passenger. The witness did not see defendant reach into his pocket.

Cochran testified she saw defendant that night talking to two people in a red van owned by Ken Kadlec. A brownish car with two men in it was parked across the street. An individual exited the car. Cochran went with defendant who spoke to this individual. Defendant and Cochran went inside defendant's house where Koestner was upstairs. She saw Dave Krolic there downstairs. He asked defendant "if he was going to get the dope for him." Defendant told Dave Krolic to leave. The car and van left. She did not see "two white females around [defendant]."

On rebuttal, an investigator testified he had interviewed Cochran on December 9, 1980. She stated when she left a snack shop on February 27, 1979, defendant called her over. While they were talking a van with Pam and Ken Kadlec drove up. Cochran greeted the people in the van and then left. The investigator prepared a memorandum of this conversation.

Considering the evidence up to this point, we find that the guilt of the defendant has been proved beyond any reasonable doubt in an overwhelming manner. The testimony of the undercover officer stands unassailed. A field test, as performed by the officer, has been approved by the courts of this jurisdiction. (See *People v. Owens* (1969), 41 Ill. 2d 465, 467, 244 N.E.2d 188. See also *People v. Hill* (1978), 58 Ill. App. 3d 494, 498, 374 N.E.2d 827, *appeal denied* (1978), 71 Ill. 2d 604.) The positive testimony of the qualified chemist is an added element of proof which, however, requires further comment.

As against this formidable case, defendant has produced the testimony of two witnesses. The testimony of one was contradicted in part on rebuttal evidence of the State. In any event, the defense testimony as a whole is weak and scanty and entirely of a negative nature. The trial judge was not obliged to believe the defense evidence over the strong and positive evidence of the prosecution. The question of reasonable doubt was primarily for the trial judge. *People v. Berland* (1978), 74 Ill. 2d 286, 307, 385 N.E.2d 649.

The rather unique aspect of this case arises as follows: the sale in question took place on February 27, 1979. Defendant was arrested May 10, 1979. Defendant filed no motion for discovery until February 13, 1980. The State answered on the same day. The answer states part of the physical property which the State intended to use at trial was "0.7 grams of phencyclidine." Discovery continued during October and December of 1980. Defendant did not request a sample of the drug for his own tests.

Trial commenced May 13, 1981. Prior to trial no motion of any kind was made by defendant for production or testing of the drug sample. At the opening of trial, defense counsel suggested to the trial court that he wished to "view the physical evidence." The State reported to the court in response to this request that the substance in question had been accidentally destroyed and the State learned of this destruction two weeks before commencement of trial. In argument on this issue the assistant State's Attorney represented to the trial court that the physical evidence was "inadvertently destroyed" and this fact was made known to counsel for defendant. The trial court expressly found that the destruction was accidental or inadvertent.

Defendant's contention here rests upon these circumstances. Defendant cites and relies upon two cases:

*People v. Taylor* (1977), 54 Ill. App. 3d 454, 369 N.E.2d 573, dealt with a sample of heroin which "weighed 0.5 grams (less than one-fiftieth of an ounce)." (54 Ill. App. 3d 454, 455.) One test exhausted half of the substance. The chemist washed the remainder down the drain. The defendant filed a prompt discovery motion "seeking the results of any tests performed by the State on the substance he was alleged to have delivered, and a representative sample of the substance." (54 Ill. App. 3d 454, 455.) The State responded with a test report and noted the fact that the substance had all been consumed in testing. Defendant made a motion to exclude the testimony and to dismiss the case. Defendant called six alibi witnesses and testified himself that he did not see nor deal with the narcotic agents and did not learn of the charges until arrested virtually five months after the incident.

We do not find *Taylor* applicable here. In *Taylor* a proper motion for production of the substance for testing was promptly made. The case at bar deals with accidental destruction after a field test and complete chemical testing where no motion was made other than a verbal request to "view the physical evidence" at the very moment of trial. We note also that in *Taylor* the court remanded the cause for a new trial using this important language (54 Ill. App. 3d 454, 458):

> "The objection to destructive testing by the prosecution is that the defendant cannot meet or dispute the test results by evidence of equal integrity and persuasiveness, as it is clear that laboratory

analysis of the evidence will carry great weight with a jury. If the results of the scientific tests are suppressed, the State may still be able to avail itself of other evidence to prove the presence of heroin in the substance in question.

The presence of narcotics may be proved by circumstantial evidence, and the substance in question need not be produced at trial. *People v. Robinson,* 14 Ill. 2d 325, 153 N.E.2d 65 (1958); *People v. Binkley,* 25 Ill. App. 3d 27, 322 N.E.2d 514 (1975).

In *Toliver v. United States,* 224 F.2d 742 (9th Cir. 1955), the court said:

> 'We find in the record, ample evidence from which the jury could conclude that heroin was involved in the absence of the witness' own opinion. The exhorbitant price paid for the small amount of substance; the fact it was a powder; that [the witness] had been a user and had had previous transactions in narcotics with the appellant; that [the witness] bought the substance as heroin; that [the witness] sold the substance to his customers as heroin and that none of them "kicked" or complained, supplied sufficient evidence for the jury to draw the inference that the powder was heroin.' (224 F.2d 742, 745.)

Like language appears in *United States v. Agueci,* 310 F.2d 817 (2d Cir. 1962), and *United States v. Lawson,* 507 F.2d 433 (7th Cir. 1974). Thus it is clear that the identity of the illegal substance may be proved by circumstantial evidence."

Furthermore, the court stressed (54 Ill. App. 3d 454, 457-58):

> "This holding should not be read as stating that in every instance in which an agency of the State destroys all of a controlled substance in the process of testing, the conviction of the defendant cannot stand. [Citation.] *But whenever an accused seeks by timely motion a sample of the allegedly controlled substance,* so that it can be subjected to independent testing under appropriate safeguards as may be deemed necessary by the trial court [citation], a heavy burden devolves upon the State either to produce a testable sample or to prove by clear and convincing evidence that the destruction of all of the substance in its possession was necessary." (Emphasis added.)

We do not believe *Taylor* was ever reviewed by the supreme court of this State. Sources available to us show dismissal of a petition for leave to appeal.

*People v. Dodsworth* (1978), 60 Ill. App 3d 207, 376 N.E.2d 449, *appeal denied* (1978), 71 Ill. 2d 611, parallels *Taylor. Dodsworth* involved .03 of a gram of a substance, all of which was destroyed before testing.

The parties stipulated only one-third of this was necessary for testing. (60 Ill. App. 3d 207, 208.) Prior to trial "the court had granted a motion by the defendant for an order directing the State to produce the substance for testing by the defendant * * *." (60 Ill. App. 3d 207, 208-09.) The *Dodsworth* court treated the matter as unnecessary and presumably intentional destruction of evidence and remanded the cause for a new trial.

A strong and impressive dissent pointed out, and cited authority to the effect, "that the exhaustion of the supply of a narcotic or controlled substance is not a valid basis for excluding the State's analysis of the samples available as a denial of due process." (*People v. Dodsworth* (1978), 60 Ill. App. 3d 207, 211.) The dissent pointed out the practical difficulties of testing which existed in that particular case including the fact that the quantity of the drug involved was 6% of the amount involved in *Taylor*. The dissent also noted that the record did not suggest "the validity of the chemical identification was a genuine question of fact at trial." *People v. Dodsworth* (1978), 60 Ill. App. 3d 207, 213.

We find *Dodsworth* and *Taylor* cited and distinguished in a somewhat analogous situation involving destruction of a gun by the State. In *People v. Ellis* (1981), 93 Ill. App. 3d 79, 84, 416 N.E.2d 1174, this court approved *Dodsworth* and *Taylor* insofar as they condemned the "unnecessary destruction" of what might have been material evidence but concluded that "the destruction of the revolver in this case was not prejudicial to the defense." (93 Ill. App. 3d 79, 84.) The *Ellis* court also pointed out the intentional destruction of the substance in *Dodsworth* and *Taylor* and the fact that the defense had made a timely and proper motion to exclude the evidence.

We find *Ellis* cited in *People v. Delk* (1981), 96 Ill. App. 3d 891, 903, 421 N.E.2d 1341. There, the court disapproved of destruction of a weapon but pointed out that this was not prejudicial to the defense.

■■ Upon consideration of all of these authorities, we conclude the destruction of the narcotic sample in the instant case was accidental rather than intentional or purposeful and this destruction did not in any manner prejudice the defendant. In fact, after reading the entire record before us we are convinced that defendant received an eminently fair trial and that his legal rights were not denied to the slightest degree.

■■ Defendant urges violation of principles of hearsay and best evidence. We find no hearsay problem here. Defendant cites no authorities on this point. At trial, the State offered and the court received, over specific objection by defendant, photocopies of two evidence bags or envelopes and three pages from the log book of the crime laboratory. The photograph of the plastic evidence bag showed the initials of the undercover officer and of another agent together with a date and case number. A manilla evidence envelope had writing on the outside by the officer

describing the evidence and the place and time he had received it. The officer and the chemist identified photocopies of these items as true and accurate. The chemist also identified photocopies of three pages of the laboratory log book which reflected receipt of the evidence. We find no merit to this contention.

■■ Defendant cites *People v. Klisnick* (1979), 73 Ill. App. 3d 148, 157, 390 N.E.2d 1330. *Klisnick* holds the original of the document is not required and secondary evidence is admissible where the original is lost as long as it has not been destroyed in bad faith. (73 Ill. App. 3d 148, 157.) In instances in which the absence of an original document is properly accounted for, a sufficient foundation has been made so that secondary proof is legally proper. This principle is clearly set out in *People v. Baptist* (1979), 76 Ill. 2d 19, 26-27, 389 N.E.2d 1200; *People v. Taylor* (1968), 40 Ill. 2d 569, 574-75, 241 N.E.2d 409; *People v. Bowman* (1981), 95 Ill. App. 3d 1137, 1141-44, 420 N.E.2d 1085.

One basic caveat demands attention. This court cannot and will not tolerate intentional destruction of evidence. However, the presence of three factors impels us to affirm the judgment here. First, the representation of the State's Attorney convinces us, as it did the careful and experienced trial judge, that the loss of the evidence here was purely inadvertent. Second, despite complete discovery, no attempt was made by defendant to obtain an independent chemical analysis of the substance in question until the very moment of trial. Then defendant asked if he "could view the physical evidence." Third, as above shown, the evidence of guilt here is truly overwhelming and virtually unassailed. These considerations warrant and require affirmance of the conviction.

For these reasons the judgment appealed from is affirmed.

CAMPBELL, P. J., and McGLOON, J., concur.