THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CHARLES S. NEWBERRY, Defendant-Appellee.

Second District    No. 2—92—0822

Opinion filed August 17, 1994.

DOYLE, J., dissenting.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers and Lisa Anne Hoffman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The defendant, Charles Newberry, was indicted in the circuit court of Kane County on a single count of unlawful possession of a look-alike substance with intent to distribute (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 1404(b) (now 720 ILCS 570/404(b) (West 1992))). The charge was nol-prossed pursuant to a motion by the State, and the defendant was reindicted on different charges involving the same substance. The new indictments charged the defendant with two counts of unlawful possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 1401 (now 720 ILCS 570/401 (West 1992))) and one count of unlawful possession of a controlled substance without a controlled substance tax stamp (Ill. Rev. Stat. 1991, ch. 120, par. 2160 (now 35 ILCS 520/10 (West 1992))). Additional indictments were subsequently filed which charged the defendant with unlawful possession of a controlled substance with intent to deliver while on school property (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 1407(b)(1) (now 720 ILCS 570/407(b)(1) (West 1992))) and unlawful possession of a controlled substance (Ill. Rev. Stat. 1991, ch. 56$^1$/$_2$, par. 1402(b) (now 720 ILCS 570/402(b) (West 1992))). The circuit court granted the defendant's motion to dismiss the indictments on the ground that the State's destruction of the alleged controlled substance violated the defendant's right to constitutional due process. Following the trial court's denial of the State's motion to reconsider, the State filed a timely certificate of impairment and notice of appeal. For the following reasons, we affirm.

The relevant facts are undisputed. In January 1991, the defen-

dant was charged with possession of a look-alike substance with intent to distribute. A field test of the substance was negative for the presence of a controlled substance. A subsequent laboratory test, conducted approximately one month following the defendant's arrest, revealed the presence of cocaine. On February 19, 1992, the defendant was indicted for, among other related charges, possession of a controlled substance with intent to deliver. Approximately 10 days later, the look-alike substance charge was nol-prossed.

On April 2, 1992, the defendant filed a general motion for discovery which requested:

"7. A list of, and an opportunity to examine and photocopy any books, papers, documents, photographs, or tangible objects which the prosecution intends to use in the hearing or trial or which were obtained from or belonged to the accused."

The State responded to the motion by stating that all white powdery substances obtained from the defendant may or may not be offered into evidence at the time of trial.

On June 7, 1992, upon observing certain computer data which showed that the look-alike substance charge was dismissed, an evidence technician destroyed the white powdery substance obtained from the defendant which allegedly contained cocaine. The defendant moved to dismiss the indictment on the basis that the State's destruction of the white powdery substance violated his due process rights.

The trial court granted the defendant's motion to dismiss the indictment on the basis that the defendant's general motion for discovery was sufficient to require the State to preserve the drug evidence. Thus, the court ruled that the State's destruction of the substance in the face of the defendant's motion for discovery violated the defendant's due process rights. The State appealed.

Trial courts are authorized to dismiss an indictment when a defendant has been denied due process. In ascertaining whether a due process violation has occurred, the trial court must proceed with restraint and dismiss the indictment only when the defendant shows that the violation has caused actual and substantial prejudice. *People v. Young* (1991), 220 Ill. App. 3d 488, 492.

On appeal, the State contends that the trial court erred in dismissing the indictment because there was no due process violation. The State asserts that under *People v. Taylor* (1977), 54 Ill. App. 3d 454, *People v. Dodsworth* (1978), 60 Ill. App. 3d 207, and *People v. Sleboda* (1988), 166 Ill. App. 3d 42, the defendant must file a timely motion to preserve the evidence. Since the defendant did not file a specific request to preserve, the State contends that a violation of due

process did not occur. The defendant responds by asserting that his discovery motion was a sufficiently specific request for preservation. The defendant further contends that *California v. Trombetta* (1984), 467 U.S. 479, 81 L. Ed. 2d 413, 104 S. Ct. 2528, and *Arizona v. Youngblood* (1988), 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333, require the State to preserve the evidence even in the absence of a specific defense request.

In *Trombetta*, the Supreme Court held that the due process clause of the fourteenth amendment did not require law enforcement agencies to preserve breath samples in order to introduce breath-analysis test results in prosecuting the defendant for driving under the influence of intoxicating liquor. The *Trombetta* holding centered around the good or bad faith of the State in destroying the evidence and whether the evidence might be expected to play a significant role in the suspect's defense. The *Trombetta* court articulated a two-prong standard of constitutional materiality to be used in determining whether a defendant was denied due process of law due to the destruction of evidence. To successfully assert a violation of due process, the defense must establish that (1) the evidence possessed an exculpatory value that was apparent before the evidence was destroyed; and (2) the evidence is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable available means. *Trombetta*, 467 U.S. at 489, 81 L. Ed. 2d at 422, 104 S. Ct. at 2534.

Later, in *Youngblood*, the Supreme Court rejected a defendant's claim that his due process rights were violated when the State failed to properly preserve clothing and a rectal swab taken from the victim following a sexual assault. Applying the *Trombetta* standard, the *Youngblood* court indicated that the presence or absence of bad faith by the State in destroying the evidence turns on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed. When the State fails to preserve evidentiary material of which "no more can be said than that it could have been subject to tests, the results of which might have exonerated the defendant," then "requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it." (*Youngblood*, 488 U.S. at 57-58, 102 L. Ed. 2d at 289, 109 S. Ct. at 337.) Although the rectal swabs could have been subject to tests which might have exonerated the *Youngblood* defendant, the court held that no due process violation occurred because the defendant failed to establish bad faith on the part of the police.

In support of its assertion that the trial court erred in dismissing the indictment, the State cites *People v. Tsombanidis* (1992), 235 Ill. App. 3d 823, 832-33. In *Tsombanidis*, the Appellate Court, First District, found no due process violation where drug evidence was inadvertently destroyed. According to Drug Enforcement Agency (DEA) procedures, the investigatory file for a particular suspect was used for subsequent suspects brought to the agency's attention by the original suspect. After undercover purchases of alleged controlled substances were made from the defendant, the evidence was placed in the file for the suspect who reported the defendant to the DEA. Sixteen months after the file was opened for the original suspect, an assistant State's Attorney notified the DEA that the original suspect pleaded guilty and that the agency could destroy the drug evidence related to the case. Pursuant to standard office procedure, an agent destroyed the drug evidence unaware that the file also contained drug evidence against the defendant. The defendant's motion to dismiss the indictment was denied by the trial court on the basis that, although the DEA was negligent and sloppy in its handling of the drug evidence, its destruction was inadvertent and not in bad faith.

On appeal, the defendant urged the Appellate Court, First District, to follow *People v. Taylor* (1977), 54 Ill. App. 3d 454, and *People v. Dodsworth* (1978), 60 Ill. App. 3d 207. Both *Taylor* and *Dodsworth* involved the unnecessary consumption of drug evidence during pretrial testing. Following a comparison of the reasoning and result in *Youngblood* with that of *Taylor* and *Dodsworth*, the *Tsombanidis* court concluded that *Youngblood* overruled *Taylor* and *Dodsworth*. (*Tsombanidis*, 235 Ill. App. 3d at 832.) Applying the *Youngblood* standard, the *Tsombanidis* court concluded that, although the DEA was negligent, the record did not contain any evidence that the DEA acted in bad faith. Accordingly, the *Tsombanidis* court held that the defendant endured no violation of his due process rights.

In this case, as in *Tsombanidis*, the State seeks to submit test results of evidence it destroyed in order to incriminate the defendant. At the same time, the State claims that no violation of due process occurred due to the destruction of evidence because under *Youngblood*, the evidence was not destroyed in bad faith. We believe that *Tsombanidis* and its reliance on *Youngblood* is legally flawed due to the nature of the evidence that was destroyed.

The disputed evidence in *Youngblood* was rectal swabs taken from the victim of a sexual assault. The significance of the rectal swabs was speculative, as the defendant asserted that it *could* have exonerated him *if* DNA tests were performed which indicated that

he was not the perpetrator of the sexual assault. The prosecution did not seek to present this evidence in its case in chief. In *Tsombanidis*, however, the State destroyed drug evidence. The evidence was particularly significant because the State's case hinged on proof that the destroyed evidence was a controlled substance. See *People v. Madison* (1994), 264 Ill. App. 3d 481, 492; *People v. Delgado* (1993), 256 Ill. App. 3d 119.

●1 For this reason, we disagree with *Tsombanidis'* assertion that *Youngblood* has overruled *Taylor* and *Dodsworth*, and that no due process violation occurs when the defendant does not prove bad faith on the part of the State. In both *Taylor* and *Dodsworth*, the defendants were charged with unlawful delivery of a controlled substance and unlawful possession of a controlled substance, respectively. In both cases, tests of the substances were performed by the State, and the remainder of the evidence was destroyed. The defendants claimed that they were denied due process since they were unable to perform independent tests. The *Taylor* court distinguished the Supreme Court case on point at the time, *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, on the basis that the evidence that was destroyed was *not* favorable to the defense. If available, it would have been presented by the State as part of its case in chief. The *Taylor* court was particularly concerned with the defendant's ability to prove a defense without the evidence in question. According to the *Taylor* court, "inherent in the most narrow view of due process are the right to know of adverse evidence and the opportunity to rebut it." (*Taylor*, 54 Ill. App. 3d at 456.) The *Taylor* court articulated the following standard to be applied in determining whether a defendant's due process rights were violated due to the destruction of evidence:

> "This holding should not be read as stating that in every instance in which an agency of the State destroys all of a controlled substance in the process of testing, the conviction of the defendant cannot stand. [Citation.] But whenever an accused seeks by timely motion a sample of the allegedly controlled substance, so that it can be subjected to independent testing under appropriate safeguards as may be deemed necessary by the trial court [citation], a heavy burden devolves upon the State either to produce a testable sample or to prove by clear and convincing evidence that the destruction of all of the substance in its possession was necessary. If it can do neither, then it should not, as a matter of fundamental fairness, be permitted to introduce into evidence the results of its tests." (*Taylor*, 54 Ill. App. 3d at 457-58.)

In *Dodsworth*, the court applied the *Taylor* standard and held that a

due process violation occurs when the State unnecessarily destroys alleged contraband, thereby preventing a defendant from conducting independent testing, and admits into evidence the results of the State's tests. The *Dodsworth* court further indicated that if destructive testing may be excused on any grounds such as an accident, other inadvertence, or even negligence, the State bears the burden of proving, by clear and convincing evidence, that the reason for the destruction was justified. *Dodsworth*, 60 Ill. App. 3d at 210.

•2 We believe that the standards articulated in *Taylor* and *Dodsworth* are applicable to cases wherein the very evidence to support the conviction is destroyed by the State. In this case, the defendant filed a general motion for discovery of evidence the State intended to use at trial. The trial court specifically found that the motion was sufficient to require preservation of the drug evidence. Since the defendant was charged with possession and delivery offenses, as in *Taylor* and *Dodsworth*, the State's case hinged on proof that the defendant possessed and/or delivered a controlled substance. Contrary to the evidence that was destroyed in *Youngblood*, the drug evidence that was destroyed was essential to the *State* in establishing its case in chief. As indicated by the *Taylor* court, expert opinions concerning the accuracy and conclusiveness of tests performed on chemical substances can and do differ. A primary strategy available to the defense is to raise reasonable doubt concerning the accuracy of the tests. Without an independent test, a defendant will not be able to contest whether the results of the State's test were accurate. *Dodsworth*, 60 Ill. App. 3d at 210; *Taylor*, 54 Ill. App. 3d at 456.

In determining whether a violation of due process occurred in the instant case, the court was required to consider whether the defendant would have been able to establish a defense without the evidence in question. It is significant that the State's initial test of the evidence that was destroyed was negative for the presence of a controlled substance. Thus, the availability of the evidence for testing by the defendant was crucial. Since the State could not produce a comparable sample for independent testing, *Taylor* and *Dodsworth* require the State to prove, by clear and convincing evidence, that the destruction of substance was justified. Although the destruction of the evidence was inadvertent, we do not believe the State sustained its burden of proving the destruction was necessary or justifiable.

For the foregoing reasons, we determine that the defendant has sustained his burden of proving a substantial deprivation of due process rights due to the destruction of evidence. Therefore, the trial court's decision to dismiss the indictment based upon a violation of due process was not against the manifest weight of the evidence.

Accordingly, we affirm the judgment of the circuit court of Kane County.

Affirmed.

GEIGER, J., concurs.

JUSTICE DOYLE, dissenting:
I respectfully dissent.

I completely agree with the majority's rejection of the State's argument that, under *Sleboda*, the defense must request preservation of a controlled substance as a precondition to later objecting to its destruction. The materiality of the wrecked automobile in *Sleboda*, which was argued to be potentially exculpatory, was a matter of legitimate dispute. This court observed that when the defense has made a timely request for preservation of certain evidence, it will be relieved of the usual burden of demonstrating that the exculpatory value of the evidence was readily apparent at the time of its destruction. The prosecutor may not readily foresee that a particular object in his evidence locker holds exculpatory significance; therefore, the defense must have an opportunity to red flag the importance of the object by requesting its preservation. When the State proceeds to destroy the evidence in the face of such a request, it will not be heard to dispute its materiality.

However, in controlled substances cases, these considerations become irrelevant. Unlike other species of prosecutions, which may involve a variety of items of evidentiary material of varying exculpatory value and relevance, the *sine qua non* in a controlled substances case is the alleged contraband itself. It has inherent potential for being conclusively exculpatory. Its character as such, however, can be ascertained only following testing. Drug evidence is, therefore, without further inquiry, presumptively material. There is no need to inquire whether such evidence possessed readily apparent exculpatory value when it was lost or destroyed, or whether a specific request for its preservation was made.

I agree, therefore, that the *Taylor* guidelines for preservation of drug evidence remain valid. The State must be responsible, from the outset, for taking reasonable measures to preserve a testable sample of the seized substance to provide the defense an opportunity to perform its own analysis. *Taylor*, 54 Ill. App. 3d at 457-58.

In the present case, it is undisputed that the substance was destroyed by officers of the State. Further, the materiality of the destroyed substance cannot be doubted. However, I must respectfully

disagree with the trial court and our majority that the inquiry was thereby concluded and that the trial court's only remaining function was to mechanically find a due process violation requiring dismissal of the indictment.

In my opinion, a determination that materially exculpatory evidence (or evidence specifically earmarked for preservation) has been destroyed or lost by the State is only one aspect of the court's due process evaluation. An equally essential, but often more troublesome, analysis must be made of the circumstances of the destruction or loss before it can be known what consequences are to attach.

In the present case, the State alleges that the destruction was occasioned through its inadvertence or negligence, as opposed to any corrupt motive or bad faith. The *Taylor* and *Dodsworth* cases fail to resolve how the court's ultimate ruling should be affected by a finding of inadvertence or negligence. Because these cases limit themselves to prescribing the consequence of *unnecessary destructive testing* of substances, the "necessary-unnecessary" formula adopted therein is not directly applicable to the present question of how to handle a finding of inadvertent destruction. After concluding that the State must sustain a heavy burden of showing that its deliberate destructive testing was "necessary," the *Dodsworth* court commented, "By analogy to that statement, we also conclude that if the destructive testing may be excused on any grounds such as *accident, other inadvertence or even negligence,* a similar burden is placed upon the State to show that this was the reason for the destruction." (Emphasis added.) (*Dodsworth,* 60 Ill. App. 3d at 210.) *Dodsworth* declined to rule on whether any of these reasons would constitute an acceptable excuse, noting that this issue was not before the court.

In *Tsombanidis,* however, the Appellate Court, First District, directly addressed this crucial issue under facts comparable to the present case. In that case, a miscommunication between a prosecutor and a drug agent resulted in an inadvertent destruction of the substance. Following the guilty plea of a codefendant, the prosecutor directed the agent to routinely destroy the drug evidence in the codefendant's file. The agent carried out the instructions; however, neither the prosecutor nor the agent was aware that the file also contained evidence against the defendant. Drawing upon a comparison of the reasoning and result in *Youngblood* with that of *Taylor* and its progeny, the *Tsombanidis* court concluded that although the agent was negligent, the record did not reflect that he acted in bad faith. Accordingly, the court applied the *Youngblood* standard of bad faith and determined that the defendant endured no violation of his due process rights.

As illustrated in *Tsombanidis*, although the physical act of destroying the substance might be portrayed by some as, in that limited sense, "intentional," it is the *decision* to destroy which, for our purposes, must be the focus of any motive analysis. If that decision was the product of inadvertence or failure to employ ordinary care, then the destruction should be viewed as negligent, rather than deliberate or intentional.

Considering that *Taylor* and *Dodsworth* purport to address only the limited subject of whether consumptive testing is "necessary or unnecessary," as opposed to the question of accidental or negligent destruction of evidence, I do not find those cases to conflict with the principles of *Youngblood*.

In any event, I submit that *Tsombanidis* provides the correct approach in those cases in which it is claimed that evidence has been lost or destroyed by negligence or inadvertence. Unless it has been determined that the State's actions were motivated by *bad faith*, there should be no finding of a denial of due process of law. The *Youngblood* bad-faith standard has been recently recognized by our supreme court in the context of evidence other than drugs. (See *People v. Ward* (1992), 154 Ill. 2d 272, 298-99 (no due process violation where State's failure to preserve alleged brain matter could "at worst be described as negligent" and there was no evidence of bad faith).) Several other courts, citing *Youngblood*, have adopted this approach. (*United States v. Barton* (9th Cir. 1993), 995 F.2d 931; *United States v. Boyd* (3d Cir. 1992), 961 F.2d 434; *Griffin v. Spratt* (3d Cir. 1992), 969 F.2d 16; *United States v. McKie* (D.C. Cir. 1991), 951 F.2d 399, 403; *United States v. Malbrough* (8th Cir. 1990), 922 F.2d 458; *Bailey v. United States Parole Comm'n* (N.D. Ill. 1991), 769 F. Supp. 1025; *United States v. Dougherty* (W.D. Wis. 1989), 774 F. Supp. 1181, 1187; *United States v. Lov-It Creamery, Inc.* (E.D. Wis. 1989), 704 F. Supp. 1532, 1548.) Parenthetically, although the issue may not be presented in this case, it would appear to be a reasonable assumption that conduct amounting to "gross negligence," or a pattern of conscious indifference to the discovery rights of the defense could, in appropriate circumstances, be deemed to be tantamount to bad faith on the part of the State.

It is evident to me from the trial court's written order that the dismissal of the indictment was based solely upon the court's narrow finding that the State destroyed the evidence in the face of a specific motion to preserve. I would, therefore, reverse and remand for a further hearing in which both parties may address the issue under what I believe to be the correct standard, *i.e.*, whether the State's destruction of the evidence was undertaken in bad faith or whether, as al-

698

leged, the destruction is excusable as having been occasioned through only negligence or inadvertence.