Charles Frederick **GREEN**, Appellant,

v.

**COMMONWEALTH of Kentucky**, Appellee.

Court of Appeals of Kentucky.

Aug. 10, 1984.

Discretionary Review Denied by Supreme Court Feb. 21, 1985.

William M. Radigan, Asst. Public Advocate, Frankfort, for appellant.

David Armstrong, Atty. Gen., and Joseph R. Johnson, Asst. Atty. Gen., Frankfort, for appellee.

Before CLAYTON, McDONALD and MILLER, JJ.

MILLER, Judge.

Appellant brings this appeal from a Schedule II controlled substance (dilaudid) conviction in the Fayette Circuit Court. KRS 218A.140 and .990. Sentence was enhanced under the provision of the first-degree persistent felony (PFO) statute. KRS 532.080. He complains of four errors in his trial which lasted from February 28 through March 2, 1983. Appellant complains: (1) that the evidentiary integrity of a "portion" of a pill admitted against him was lacking; (2) that evidence of "other crimes" was improperly admitted when some marijuana (not connected with the prosecution of this case) was inadvertently sent into the jury room, along with other exhibits; (3) that it was error for the court not to require a defense witness to take the stand, when the witness informed the court of his intention to invoke his self-incrimination privilege; and (4) that the results of the State Police lab's testing of the "portion" of pill supposedly taken from appel-lant should have been suppressed, for reason the state testing lab unnecessarily, though innocently, consumed the entire sample in the testing process, thereby not giving the appellant an opportunity to perform his own analysis. The facts are these:

Just before noon on November 5, 1982, officers of the Lexington Police Department, aided by other officials, conducted a drug raid upon 435 Hawkins Avenue in that city. These premises were owned by William (Skinner) Clay and were known as a place for the sale of illicit drugs. The raid was based upon a warrant obtained with information furnished by an informant upon whom the police had secreted a recording device. The informant made a purchase an hour or so before the raid. At that time, the informant approached the premises and purchased one pill of dilaudid from a person named Gary Shanks. The purchase was made by the informant through a side window in the house. No other persons were involved in this purchase. The informant paid for the pill with "marked" currency. There were five one-dollar bills, two five-dollar bills and one twenty-dollar bill. It is estimated in the record that approximately thirteen officials took part in the raid. When officers approached the front door of the "shotgun"-type house, persons began to exit through the rear door. The evidence is conflicting as to how many persons exited the rear door and, for that matter, how many persons were actually on the premises when the raid commenced. The occupancy was variously stated to be between four and seven persons. It is certain that the appellant/Charles Frederick Green and Gary Shanks exited the rear and commenced climbing over a six to eight-foot chain-link fence. They were placed under arrest by officers posted at the rear. Patrolman Bill Neeley arrested appellant. He took appellant to the front yard of the premises and conducted a search of his person, removing personal items, $1,081.00 in cash, and a "small, pink, round tablet." Among the

cash was the "marked" twenty-dollar bill.[1] Patrolman Bill Neeley was assisted by Detective Pat Taylor. Upon arresting appellant, Patrolman Neeley handcuffed him, searched his person, and kept him in the front yard under surveillance. Patrolman Neeley handed directly to Detective Taylor the items removed from appellant's person, including the "small, pink, round tablet." Detective Taylor stated that she placed the items in the left pocket of her jacket. She then went into the house, passing through the front room, middle room and into the kitchen. She proceeded to clear away a place on the kitchen table where she could spread the items removed from appellant, and inventory same by notation upon the back of the search warrant. When she reached into her left pocket, she discovered that the "small, pink, round tablet" was missing. Thinking that she had dropped it during the transfer from Patrolman Neeley, she immediately returned to the front yard where appellant was still in custody and under the surveillance of Patrolman Neeley. Other persons were also in the area. Upon examining the ground and walkway, Detective Taylor found a portion of a small pink pill which appeared "smudged." She retrieved this particle of a pill and retained it for "testing," on the assumption that it was the pill actually removed by Patrolman Neeley during the search of appellant's body. It was assumed that the appellant or someone else had stepped upon the pill either intentionally or inadvertently. This particle of pill, tested by the state crime lab and determined to be dilaudid, was totally consumed in testing. During the search of the premises, sixty-four other dilaudid tablets were found in the back yard. At no time did any of the arresting officials see the appellant in possession of, or in the process of disposing of, dilaudid tablets. The only tablet of which he was alleged to possess was the single "small, pink, round tablet" removed

from his person by Patrolman Neeley. The sixty-four tablets from the back yard, identified by the state crime lab as being dilaudid, were admitted into evidence over appellant's objection. Likewise over appellant's objection, the results of the lab tests upon the single "portion" of tablet found in the front yard by Detective Taylor were admitted into evidence.

We think the question of lab test results on the single "small, pink, round tablet" found in the front yard by Detective Taylor and thought to be the same one taken by Patrolman Neeley from the defendant is dispositive of this appeal. Certainly, the integrity of this evidence is open to much doubt (*Cf. Harrod v. Commonwealth*, Ky. App., 552 S.W.2d 682 [1977]), but the more serious problem is the argument that the state crime lab, after the defendant was charged, unnecessarily (though unintentionally) consumed the entire substance in testing. The trial judge sustained appellant's motion to make an independent test of the single pill. However, when it was learned that the entire pill had been consumed by the Commonwealth in testing, the judge refused appellant's motion for a production of the laboratory notes made incidental to the testing. Over appellant's objection, John Harris, forensic chemist for the Commonwealth, testified as to the test results. He essentially conceded that it was not necessary to consume the entire portion of the pink pill in testing. He indicated that the entire consumption of the pill was caused by the failure of anyone to advise him otherwise. This issue presented the trial judge with a question of first impression. The single question is whether, after a defendant is charged, the unnecessary consumption of the entire incriminatory drug sample may render the test results inadmissible in a drug prosecution. On the following authority, we are compelled to conclude that, under some circumstances, it may, as rights under the Four-

1. Other denominations of the "marked" money were found upon other occupants of the house who were also arrested. The money had been dusted with an invisible powder which revealed itself under ultra-violet light. Several of the persons possessed the "marked" bills and evidence of powder residue on their persons. Some of the "marked" bills were never found. This fact was not explained.

teenth Amendment to the United States Constitution and Section 11 of the Kentucky Constitution may be infringed.

In *People v. Garries*, Colo., 645 P.2d 1306 (1982), the unnecessary destruction of a blood sample in testing was held to render the test results inadmissible. The destruction occurred *before* the defendant was charged. The court stated:

> We reject the state's suggestion that the present suppression order reflects a technical and unreasonable application of the law in frustration of legitimate law enforcement objectives. The testing procedures employed have deprived the defendant of important methods of checking the accuracy of test results on crucial evidence. *Id.* at 1310.

In *Stipp v. State*, Fla.Dist.Ct.App., 371 So.2d 712 (1979), the unnecessary destruction of a cocaine sample rendered the test results inadmissible. The court stated:

> It is wrong for the state to unnecessarily destroy the most critical inculpatory evidence in its case against an accused and then be allowed to introduce essentially irrefutable testimony of the most damaging nature against the accused. It is wrong because it violates a most fundamental right of due process, .... *Id.* at 713.

> .   .   .   .   .

> ... if the state has a suspected illegal drug or other evidentiary item it expects to destroy by testing then the better rule is to notify the accused and allow him to have some minimal participation in the testing process .... *Id.* at 714.

In *People v. Taylor*, 54 Ill.App.3d 454, 12 Ill.Dec. 76, 369 N.E.2d 573 (1977), the unnecessary destruction of a heroin sample rendered the test results inadmissible. The destruction was *before* charges were placed against defendant. The court stated:

> We are not suggesting that the State has a duty to disclose at the investigatory stage, simply that it has a duty to preserve some part of the substance so that an independent chemical analysis may be made by the putative law violator in the event criminal prosecution is later instituted. We believe that the scientific expertise exists that allows for identification of narcotics and dangerous drugs without the necessity for destructive testing where relative small amounts of the offending substance are involved. This procedure would not unduly hamper effective law enforcement. *Id.* 12 Ill. Dec. at 78, 369 N.E.2d at 575.

■ Undoubtedly, some states have procedural rules concerning the preservation of testing materials and the right of a defendant in a criminal prosecution to perform his own testing. We do not. Nevertheless, we think the right to testing is implicit under RCr 7.24. Further, the case of *James v. Commonwealth*, Ky., 482 S.W.2d 92 (1972), recognizes this right. We hold the unnecessary (though unintentional) destruction of the total drug sample, after the defendant stands charged, renders the test results inadmissible, unless the defendant is provided a reasonable opportunity to participate in the testing, or is provided with the notes and other information incidental to the testing, sufficient to enable him to obtain his own expert evaluation. Therefore, the trial court, having refused production of the lab's notes, the test results (as testified to by forensic chemist, John Harris) regarding the portion of the "small, pink, round tablet," should have been suppressed.

We have reviewed other complaints of error, and deem any errors to have been harmless, insubstantial or not likely to recur upon retrial. RCr 9.24.

For the foregoing reasons, the judgment of the Fayette Circuit Court is reversed and this cause is remanded for proceedings consistent with this opinion.

All concur.