Chad McGREGOR and Len W. Ogden, Jr., Appellants,

v.

R. Jeffrey HINES, Judge McCracken Circuit Court, Appellee,

and

Michael Carper; Joshua Carper; and Commonwealth of Kentucky, Real Parties In Interest.

No. 97–SC–1070–MR.

Supreme Court of Kentucky.

June 17, 1999.

Len W. Ogden, Jr., The Sinnott House, Paducah, KY, William F. McGee, Jr., Smithland, KY, for appellants.

R. Jeffrey Hines, Jr., Judge, McCracken Circuit Court, McCracken County Courthouse, Paducah, KY, for Hines, appellee.

Donald S. Muir, Assistant Public Advocate, Paducah, KY, for Real Party in Interest, Michael Carper.

W. Fletcher McMurry Schrock, McMurry & Livingston, Paducah, KY, for Real Party in Interest, Joshua Carper.

A.B. Chandler III, Attorney General, Ian G. Sonego, Kent T. Young, Assistant Attorneys General, Criminal Appellate Division, Frankfort, KY, for Real Part in Interest, Commonwealth of Kentucky.

J. Vincent Aprile II, Kentucky Association of Criminal Defense Lawyers, Frankfort, KY, for amicus curiae.

STUMBO, Justice.

This is an appeal as a matter of right from a denial by the Court of Appeals of a petition for a writ of mandamus. The issue presented is whether a defendant who comes into possession of allegedly exculpatory evidence has a right to have that evidence tested by his own expert, or whether he must relinquish the evidence to the Commonwealth for first testing, even if the defendant's expert believes that the Commonwealth's method of testing will destroy the evidence.

Appellant, Chad McGregor, and two brothers, Michael and Joshua Carper, were indicted for the 1996 murder and robbery of Kevin Jacobs. Joshua Carper has entered into a plea agreement with the Commonwealth. In exchange for testifying that his brother, Michael Carper, shot Jacobs in the course of the robbery, Joshua Carper will plead guilty to first-degree robbery and the Commonwealth will recommend a ten-year sentence. The Commonwealth has charged Michael Carper with, among other things, robbery and capital murder, for which it is seeking the death penalty. Appellant McGregor is charged with, inter alia, first-degree robbery and complicity to murder.

At some point, McGregor came into possession of certain items of evidence, including clothing worn by one or more of the defendants on the night of the murder/robbery. McGregor has retained a forensic chemist, Robert S. White, to do particle testing on this evidence, the results of which he believes will exculpate both him and Michael Carper and inculpate Joshua Carper as the trigger-man.

McGregor's attorney, making every effort to authenticate and preserve the chain of custody, had the evidence sent to White for testing, then notified the Commonwealth's attorney of the evidence's existence and of his intent to have it tested. He offered to allow the Commonwealth's experts to be present when White tested the evidence, and offered to turn over the evidence to the Commonwealth after White had completed his tests. The Commonwealth immediately filed a motion to compel McGregor's attorney to relinquish the evidence to the Commonwealth so that the integrity of the chain of custody could be ensured, and so the evidence could be tested first by the Kentucky State Police (KSP) Crime Laboratory.

Less than twenty-four (24) hours after the motion was filed, the trial court heard argument on the issue. The questions presented to the trial judge were that of who had the right to first test allegedly exculpatory evidence in the possession of the defendant, and of who could best preserve the chain of custody of the evidence. Because the hearing before the trial court was held on such short notice, McGregor had insufficient time to prepare his expert's affidavit regarding his own and the KSP's testing methods. Instead, McGregor's attorney merely expressed his fear that the Commonwealth's testing might be "less sophisticated" than his own expert's, and that his client's opportunity to exculpate himself might be inadvertently destroyed if the Commonwealth were permitted to test the evidence first. The trial

judge ordered McGregor and his attorney to turn over the evidence to the Commonwealth for testing within seventy-two (72) hours, or face contempt charges. The order permits McGregor's expert to be present during the Commonwealth's testing.

 In so ruling, the court stated that its primary concern was to protect the rights of the other two defendants, not just those of McGregor. This is especially important in Michael Carper's case, because he is facing a possible death penalty. Furthermore, the court seemed to feel the Commonwealth was not only more capable of maintaining the chain of custody in this case, but also would be more likely to diligently do so because the Commonwealth's case against any or all of the three defendants could be lost if the integrity of the chain of custody were impaired.[1] The court dismissed the notion that McGregor had an equally compelling reason to preserve the chain of custody due to the evidence's exculpatory value.

McGregor filed a petition for a writ of prohibition and sought emergency relief from the Court of Appeals. When the Court of Appeals declined to grant emergency relief, McGregor's attorney turned the evidence over to the Commonwealth. Because he had complied with the trial court's order compelling him to relinquish the evidence to the Commonwealth, rendering his prohibition motion moot, McGregor's attorney amended his petition to seek a writ of mandamus directing return of the evidence to his expert. Accompanying this amended petition was an affidavit from the defendant's expert stating that the type of testing for gunpowder residue usually performed by the Kentucky State Police Crime Laboratory consists of spraying the evidence with substances which would destroy the particles

he proposes to test. After some procedural maneuvering which is unimportant to this appeal, the Court of Appeals denied Appellant's motion without explanation. Appellant appealed the denial of the writ to this Court.

We first note that although Joshua Carper's attorney objected to the independent testing by McGregor's expert at the circuit court hearing, he has now filed a brief in which he states that he has no position on the issue other than that his client's rights be protected (presumably, that his plea agreement be enforced.) Michael Carper, who waived his right to attend the circuit court hearing, has submitted a brief which agrees entirely with McGregor's position on the issue. McGregor maintains that the Court of Appeals erred in refusing to grant a writ ordering the return of the evidence to his expert. He asks this Court to so order the trial court, and argues that if the Commonwealth is permitted to test the evidence first, then invaluable exculpatory evidence will be destroyed resulting in irreparable injury to the defense.

 As noted in *Green v. Commonwealth*, Ky.App., 684 S.W.2d 13, 16 (1984), our state has no procedural rules concerning the preservation of testing materials or the right of a defendant in a criminal prosecution to perform his own testing. Nevertheless, we held a defendant's right to test the evidence against him to be implicit in RCr 7.24. *Id.* The evidence at issue in *Green*, however, was inculpatory, not exculpatory, as the evidence here is alleged to be. Nevertheless, it seems clear to us that a defendant's right to test possibly exculpatory evidence is as fundamental to the assurance of due process as is his right to test inculpatory evidence, if not more so.[2] It follows that any action on the part of the trial court or the Common-

---

1. We must dispel immediately any notion that the attorneys and officers of the Commonwealth are somehow more deserving of the court's trust on the issue of preservation of evidence and maintenance of chain of custody than are defense attorneys. All attorneys are bound by the rules of ethics to uphold the law and obey the rules of court, and until the

court has reason to believe otherwise, every attorney is presumed to comply with these rules.

2. Likewise, a defendant's interest in preserving the integrity of the chain of custody of any exculpatory evidence is as compelling as the Commonwealth's, if not more so.

wealth which results in the destruction of possibly exculpatory evidence before the defense has an opportunity to test it, would seriously undermine the defense and violate the defendant's right to due process and a fair trial.

Because the hearing before the trial court was held on such short notice, thus allowing McGregor insufficient time to prepare his expert's affidavit regarding his own and the KSP's testing methods, the trial court was not able to make findings regarding whether a particular method of testing would destroy the evidence. Instead, the trial court simply found that, in the interest of justice and the rights of the other defendants, the Commonwealth was entitled to the first test.

During the advancement of the case to this Court, several facts have come to light which the trial court did not have an opportunity to consider fully at the impromptu hearing on the motion to compel—namely, the expert Robert White's assertion that the Commonwealth's testing method is likely to destroy allegedly exculpatory evidence, and the fact that the other defendants now have no objection to McGregor's expert testing the evidence first. Before this case may proceed further, the court must determine whether the Commonwealth's testing of the evidence might impair Defendant McGregor's ability to present exculpatory evidence in his defense.

■ Accordingly, we remand the case to the trial court for a hearing to determine whether the testing method of either the KSP or McGregor's expert will destroy the evidence so that the other party would subsequently be unable to test it. Upon remand, if the trial court determines that one party's proposed method of testing would destroy the evidence, or render the evidence useless to the other party, whereas the other party's method of testing would not, then the trial court shall permit the party with the benign method to test the evidence first.

■ If, on the other hand, the trial court determines that both parties' meth-ods of testing would render the evidence useless to the other, then the trial court shall order the Commonwealth to return the evidence at issue in this case to Defendant McGregor's retained expert Robert S. White for first testing. It is crucial to a defendant's fundamental right to due process that he be allowed to develop and present any exculpatory evidence in his own defense, and we reject any alternative that would imperil that right.

■ Lastly, if the trial court should ascertain that neither party's method would in any way destroy, harm, or render the evidence less valuable to the opposing party, then the court shall, after weighing all the factors discussed herein, use its discretion in determining which party is entitled to test the evidence first. Under each of the above scenarios, the nontesting or second-testing party is entitled to notice of the time and place of the test, and is permitted to have its own representative(s) or expert(s) present to observe the testing.

For the reasons set forth above, the decision of the Court of Appeals is reversed, and the case is remanded to the trial court for proceedings consistent with this opinion.

LAMBERT, C.J.; and COOPER, JOHNSTONE, KELLER, and WINTERSHEIMER, JJ., concur.

GRAVES, J., dissents by separate opinion.

GRAVES, Justice, dissenting.

Respectively, I dissent.

The majority opinion turns on the assumed accuracy of the contents of the affidavit of Appellants' expert, Robert S. White. The affidavit was considered by this Court but its contents were withheld from the trial court.

The White affidavit is not only illegible but also incomplete and speculative. This affidavit contains new evidence which was not presented to the McCracken Circuit Court for its consideration. At the appellate level, Appellants have presented facts

and evidence that they declined to present to the trial court. Appellants did not advise the trial court as to what testing procedures would be conducted, who would be conducting the testing, and when Appellants would voluntarily surrender the evidence.

While Robert S. White has a B.S. degree in chemistry and has taught high school chemistry, his affidavit does not state or identify the type of testing to be done by the Commonwealth of Kentucky. He only speculates about tests that could be performed by the Kentucky Crime Laboratory. Further, while Mr. White claims that his test is more sophisticated and extensive, he does not contend that his test is more accurate. Part of Mr. White's affidavit indicates that he will perform an instrumental type of analysis, and he assumes that Kentucky will use a wet chemical type of analysis. Mr. White neglects to state whether his instrumental test will alter the material in preparation for scanning. Will it be necessary for the material to receive a conductive coating or be placed in a vacuum tube?

Findings by a trial judge and chemical analyses are both searches for the truth, that is, to determine whether something is either true or not true. The very limited facts before this Court are susceptible to the inference that both the instrumental testing by Robert S. White and the wet chemical testing by the Kentucky Crime Laboratory would lead to the same analytical result. Of course it is quite conceivable that the Kentucky Crime Laboratory could contract out the testing to an analytical laboratory that would perform tests even more sophisticated and extensive than those of Mr. White. In these days of dueling experts, we should be mindful that any chemical testing, whether instrumental or wet analysis, is subject to human error and frailties.

I would affirm the trial court.